UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

PHILLIP CHATMAN,

        Plaintiff,

v.                                      Civil Action No. 4:15cv80

CAROLYN W. COLVIN,
Acting Commissioner of the
Social Security Administration,

        Defendant.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff Phillip Chatman ("Chatman") seeks judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for disability insurance benefits ("DIB") under Title II of the Social Security Act. Specifically, Chatman claims that because the Administrative Law Judge ("ALJ") gave significant weight to the Department of Veterans Affairs ("VA") 80 percent disability rating, the ALJ should have also concluded that he was disabled within the meaning of the Social Security Act. This action was referred to the undersigned United States Magistrate Judge pursuant to provisions of 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72(b) of the Federal Rules of Civil Procedure. For the reasons stated below, this report recommends that the court affirm the final decision of the Commissioner.

## I.     PROCEDURAL BACKGROUND

On September 9, 2011, Chatman filed an application for DIB, alleging disability beginning February 9, 2009, primarily as a result of osteoarthritis, diabetes with neurological manifestation, low back pain, neuropathy, and gastroesophageal reflux disease. (R. 200, 230,

234). The Commissioner denied his application initially (R.98-111), and upon reconsideration (R. 112-30). Chatman requested an administrative hearing, which was conducted on October 30, 2013. (R. 58-88).

On November 25, 2013, the ALJ concluded that Chatman was not disabled within the meaning of the Social Security Act and denied his claim for DIB. (R. 36-46). The Appeals Council denied Chatman's request for review of the decision (R. 1-2), thereby making the ALJ's decision the final decision of the Commissioner. Chatman then filed this action seeking judicial review of the Commissioner's decision under 42 U.S.C. § 405(g). This case is now before the court to resolve the parties' cross-motions for summary judgment.

## II.   **FACTUAL BACKGROUND**

Chatman was born in 1961, and was forty-seven years old on his alleged disability onset date. (R. 44). He completed one year of college in 1981. (R. 235). Chatman was previously employed as a job coach at a non-profit organization, a sales representative for an internet marketing company, a sales manager in vacation sales, a supervisor for a cable company, and a crew chief with the United States Air Force. (R. 224). He has not worked since February 2009 when he was laid off because his employer changed the educational requirements for his position. (R. 234). Chatman's medical records address a variety of conditions for which he sought treatment, but this report will focus on the medical conditions relevant to his VA disability rating because his only argument in this appeal is that the ALJ improperly analyzed this rating and its impact on his claim for DIB. The relevant conditions are: diabetes and related peripheral neuropathy; low back pain; mood disorder and depression; and gastroesophageal reflux disease. (R. 197-200, 234).

2

Following a hospitalization in early 2009 for diabetes-related complications, Chatman received most of his medical treatment at the Hampton VA Medical Center. (R. 346-419).  On March 30, 2009, he saw Dr. Pamela Gray for a rheumatology consultation. (R. 376-81).  Dr. Gray diagnosed Chatman with "early OA [osteoarthritis,]" "DM [diabetes] with [associated] peripheral neuropathy," and noted his general "noncompliance" with prior treatments. (R. 381). She recommended that Chatman take ibuprofen, voltaren (an anti-inflammatory medication), and gabapentin (medication to treat neuropathic pain).  Id.  At a June 11, 2009, appointment with clinical dietician Kathleen M. Gierlack, Chatman had lost a significant amount of weight, and Ms. Gierlack reported that his blood glucose was "poorly controlled" and he had "a history of noncompliance" as to his diabetes-related treatment. (R. 467-69).  In August 2009, Chatman had an MRI, which showed "[b]ilateral spondylolysis [vertebra defect] of L5," "[m]ild degenerative disc disease," "[n]o focal disc protrusion," and "[m]ild degenerative changes of the facet joints through the lumbar spine which is otherwise unremarkable." (R. 510).

On January 6, 2010, Chatman attended an initial consultation at the VA diabetes clinic. (R. 561).  He reported that "over the past year he 'took a vacation from his diabetes … [and] didn't take [his] medication or take care of [himself.]' "  Id.  The doctor recommended that Chatman continue using insulin and encouraged him to check his blood glucose at least twice daily. (R. 566).  In February 2010, Chatman had a medical consultative appointment with Dr. Stefanie Hirano for the purpose of "providing information to the State Disability office." (R. 606).  Dr. Hirano reported that Chatman had "no spinal or paraspinal muscle tenderness," "[n]o assistive device [was] needed," "[g]rip [was] 5/5 in the upper extremities," and [g]ross manipulative skills [were] normal."  Id.  She also noted that he had a normal range of motion for his elbow, forearm, wrists, shoulders, and cervical spine, but the range of motion for his lumbar

3

spine was limited to "85 degrees of flexion." (R. 607). Additionally, she reported that his "[m]otor functioning [was] 5/5 in all extremities" with "[n]o evidence of muscle atrophy," and he had "decreased sensation at the bilateral tips of [his] toes and sole of [his] feet." Id. In February 2010, Chatman also had a primary care appointment with Dr. Jian Zhu. (R. 512). At the appointment, Chatman told Dr. Zhu that he was no longer depressed and was not experiencing any abdominal pain or heartburn. (R. 511). Dr. Zhu reported that Chatman's vital signs were normal, however he had lung nodules and dyslipidemia (increased lipids in the blood). Id. His diagnostic notes reflect Chatman's prior diagnoses for diabetes and low back pain, and he indicated that Chatman should continue taking his prescribed medications for these ailments. Id. Dr. Zhu also noted that "Pt [patient] is interested in applying [for] disability benefit," and "[i]n [his] opinion pt [patient] is disabled due to his chronic medical conditions." (R. 510-12).

On September 18, 2010, Chatman presented to Nurse Practitioner Margo P. Hazzard for a VA Compensation and Pension general medical examination. (R. 667-95). On examination of his spine, Nurse Practitioner Hazzard recorded essentially normal findings, with no spasm, atrophy, or weakness, but some pain with motion and tenderness in the lumbar spine. (R. 678-79). Likewise his motor examination revealed full strength in every tested extremity. (R. 683-84). His psychiatric examination was completely normal with average intelligence. (R. 684). Nurse Practitioner Hazzard's examination report concluded that Chatman had type II diabetes mellitus with peripheral neuropathy, which was controlled with insulin and oral medication; hyperlipidemia (increased lipids in the blood), which was stable with medication; degenerative joint disease of the lumbar spine, which caused low back pain; and gastroesophageal reflux disease, which was stable with medication. (R. 694). On September 19, 2010, an x-ray of

4

Chatman's lumbar spine revealed "[f]ive lumbar type vertebral bodies in normal alignment" and "[g]rade 1 anterolisthesis [forward displacement of vertebra] L5 on S1 secondary to bilateral L5 pars defects." (R. 626). On September 27, 2010, the VA awarded him a nonservice-connected pension based on an 80 percent disability rating. (R. 196-99). In connection with this pension award, the VA concluded that Chatman was "unable to secure and follow a substantially gainful occupation due to disability." (R. 197).

On December 13, 2011, Chatman attended a psychotherapy session with Dr. Sarah J. Ingle, Ph.D. (R. 765-67). Chatman "described [his] mood as 'okay,' " and based on his self-reported symptoms, Dr. Ingle determined that he was a candidate for depression treatment. (R. 766-67). On December 27, 2011, Chatman reported for a nutrition consultation with Amber W. Allen, a clinical dietician. (R. 759-62). Ms. Allen noted that as to Chatman's diabetes treatment, his "[s]elf-monitoring [was] deficit related to unwillingness or disinterest in tracking progress as evidenced by uncertainty regarding how to complete monitoring records." (R. 760). She recommended a dietary plan with a target calorie and carbohydrate count. (R. 761).

On March 5, 2012, Chatman presented to the VA diabetes clinic. (R. 701-05). Chatman reported that he had recently experienced "low blood sugars at night due to increased activity," and the nurse encouraged him to eat breakfast everyday "even if he has to set an alarm to get up an eat," and she "educated [him] on the dangers of low blood glucose and how important it is to eat a snack if he anticipates an increase in activity." (R. 706-07). Later that same month, Chatman returned to the VA for a follow-up appointment, and the endocrinologist reported that Chatman's "problem [was] severe non adherence to insulin regime … [and] [n]ot doing any carbohydrate counting even though he was sent for reinstruction." (R. 1108-16). Chatman also complained of painful neuropathy, which caused numbness, pain, and a swollen feeling in his

toes, but he stated that it usually responded successfully to medicine. (R. 1109-10). A foot examination showed that his sensation and circulation were normal and he had no deformity or ulceration. (R. 1115). The endocrinologist recommended that Chatman properly monitor his diabetes-related health issues and that he continue taking his prescribed medications. (R. 1114). In April 2012, at another follow-up appointment, the endocrinologist "advised [Chatman] to do daily exercise" and to eat three regular meals per day. (R. 1103).

On February 11, 2013, Chatman presented to Dr. Lajuana Collins-Morgan for a mental health consultation. (R. 1254-58). Chatman reported that he had struggled with depression over the past three to four years, and he "ha[d] never taken medication for more than about 2 weeks at a time." (R. 1254). Dr. Collins-Morgan noted that at the appointment, Chatman was talkative and his manner was pleasant, but his mood was depressed. (R. 1254, 1256). In May 2013, Chatman saw Dr. John O'Brian, an endocrinologist, for a diabetes assessment. (R. 1239). Dr. O'Brian recommended that Chatman monitor his blood glucose more frequently and "take[ ] his insulin before meals instead of after." Id. He also noted that Chatham was "somewhat reluctant to make these changes but he agree[ed] to do so." Id. At an endocrinology appointment in July 2013, the doctor noted that Chatman was still "[r]eluctant to make changes as patient has unreliable eating patterns (leading to hypoglycemia when he eats late brunch)." (R. 1203). The doctor again recommended that Chatman monitor his blood glucose more frequently and eat three regular meals per day. Id. In August 2013, Chatman had another x-ray of his back, and the x-ray showed "spondylolysis [vertebra defect] at L5 with unchanged mild anterolisthesis [forward displacement of vertebra] at L5-S1." (R. 1161).

At the initial level of administrative review, state agency physician Dr. Brian Strain reviewed the evidence of record. On March 8, 2010, Dr. Strain concluded that Chatman retained

the ability to occasionally lift and/or carry twenty pounds; frequently lift and/or carry ten pounds; stand and/or walk for six hours in an eight-hour workday; sit about six hours in an eight-hour workday; occasionally stoop and climb ramps and stairs; and frequently kneel, crouch, and crawl. (R. 89-97). On April 25, 2012, state agency physician Dr. Leslie Ellwood also reviewed the evidence of record, and she concluded that Chatman retained the capacity to work at the light level of exertion, completing simple tasks with limitations as to his exposure to extreme temperatures and heights. (R. 110). In July 2012, after Chatman requested reconsideration, state agency physician Dr. Carolina Bacani-Longa reviewed the record and concluded that Chatman retained the capacity for a range of medium-level work. (R. 126).

On October 30, 2013, at the hearing before the ALJ, Chatman testified about his past work history. Chatman stated that he last worked as a job coach at Chesapeake Service Systems. (R. 66). His duties included finding positions for disabled individuals and providing job training to these individuals. Id. He was laid off in February 2009 because his employer changed the educational requirements for his position. (R. 66-67). Prior to this position, Chatman worked in internet marketing and as a call center supervisor for several companies. (R. 67-68). Chatman testified that as a call center supervisor, he alternated between "walk[ing] the floor to help out other teams" and "sitting down monitoring" calls. (R. 73-74). He stated that he would not be able to "walk the floor at … a call center today … because of the back pain." (R. 74). At the hearing, Chatman's attorney presented additional medical documentation showing that Chatman had recently seen a rehabilitative specialist who recommended that he use a cane. (R. 61).

In addition to Chatman's testimony, the ALJ heard testimony from Chatman's neighbor, Patricia Sanchez, and a vocational expert, Barbara Byers. (R. 80). Chatman's neighbor, Ms. Sanchez, testified that "a couple of times a week, [she] stop[s] by and make[s] sure that

[Chatman] has food to eat for the week" and that she "cook[s] … [and does] some light cleaning and then on Saturdays, [she] generally do[es] grocery shopping for him." (R. 81). Ms. Sanchez also stated that Chatman used to accompany her to the grocery store, but recently he had been unable to do so because "it would be too long of a prolonged period for him." Id. As to Chatman's physical limitations, Ms. Sanchez indicated that she had observed his "challenges with standing for a long period of time and then he sits and then he has a challenge with sitting there for a long period for a long period of time." (R. 82).

The vocational expert, Ms. Byers, testified that Chatman's work as a job coach was a light, skilled position, and his work as an internet salesperson and call center manager was at the sedentary, skilled level. (R. 84-85). She testified that a hypothetical person who would need to alternate between sitting and standing periodically; could occasionally bend, stoop, or crouch; and would be limited to performing simple, repetitive tasks with limited interaction with the public could perform light, unskilled work as an agricultural produce sorter (250,000 jobs nationally) or mail clerk (200,000 jobs nationally), and sedentary, unskilled work as a sedentary assembler (50,000 jobs nationally). (R. 85).

## III.   STANDARD OF REVIEW

In reviewing a decision of the Commissioner denying benefits, the court is limited to determining whether the decision was supported by substantial evidence on the record and whether the proper legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g); Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. of New York v. NLRB, 305 U.S. 197, 229 (1938)). It consists of "more than

a mere scintilla" of evidence, but may be somewhat less than a preponderance. Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

The court does not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Hays, 907 F.2d at 1456. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." Craig, 76 F.3d at 589. The Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390. Thus, reversing the denial of benefits is appropriate only if either the ALJ's determination is not supported by substantial evidence on the record, or the ALJ made an error of law. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

## IV.    ANALYSIS

To qualify for disability insurance benefits under sections 416(i) and 423 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, an individual must meet the insured status requirements of these sections, be under age sixty-five, file an application for disability insurance benefits, and be under a "disability" as defined in the Act. The Social Security Regulations define "disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); see also 42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A). To meet this definition, a claimant must have a "severe impairment" that makes it impossible to do previous work or any

other substantial gainful activity that exists in the national economy.  20 C.F.R. § 404.1505(a); see 42 U.S.C. § 423(d)(2)(A).

The regulations promulgated by the Social Security Administration provide that all material facts will be considered in determining whether a claimant has a disability.  The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled.  The five questions which the ALJ must answer are:

1. Is the individual involved in substantial gainful activity?

2. Does the individual suffer from a severe impairment or combination of impairments which significantly limit his or her physical or mental ability to do the work activities?

3. Does the individual suffer from an impairment or impairments which meet or equal those listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1 (a "listed impairment" or Appendix 1")?

4. Does the individual's impairment or impairments prevent him or her from performing his or her past relevant work?

5. Does the individual's impairment or impairments prevent him or her from doing any other work?

20 C.F.R. § 1520(a)(4).

An affirmative answer to question one, or a negative answer to question two or four, results in a determination of no disability.  An affirmative answer to question three or five establishes disability.  See id. §§ 404.1520, 416.920.  The burden of proof and production rests on the claimant during the first four steps, but shifts to the Commissioner on the fifth step.  Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992)).

When conducting this five-step analysis, the ALJ must consider: (1) the objective medical facts; (2) the diagnoses and expert medical opinions of the treating and examining

physicians; (3) the subjective evidence of pain and disability; and (4) the claimant's educational background, work history, and present age. Hayes v. Gardner, 376 F.2d 517, 520 (4th Cir. 1967) (citing Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962)). At all steps the ALJ bears the ultimate responsibility for weighing the evidence. Hays, 907 F.2d at 1456.

### A.    The ALJ's Decision

As a result of his five-step analysis, the ALJ concluded that Chatman met the insured status requirements, but had not been under a disability within the meaning of the Social Security Act between his alleged onset date, February 9, 2009, and the ALJ's decision, November 25, 2013. (R. 36-46).

At step one, the ALJ found that Chatman had not engaged in substantial gainful activity since his alleged onset date, February 9, 2009. (R. 38). At step two, the ALJ found that Chatman suffered from the following severe impairments: diabetes, diabetic neuropathy, sinus tachycardia (elevated heart rate), mild lumbosacral anterolisthesis (vertebral displacement), and depression. Id. At step three, the ALJ found that Chatman did not suffer from a listed impairment (R. 39), and at step four, the ALJ found that Chatman's impairments prevented him from performing his past relevant work (R. 44). In drawing his step four conclusion, the ALJ determined that Chatman had a residual functional capacity ("RFC") to perform light work, except that he would need to alternate between sitting and standing periodically; would be limited to performing simple repetitive tasks; would be limited to only occasional bending, stooping, or crouching; and would need to avoid occupations requiring close interaction with the general public. (R. 40). At step five, the ALJ concluded that jobs which Chatman could perform exist in significant numbers in the national economy. (R. 45).

In making his RFC determination and finding of no disability, the ALJ found Chatman's statements as to his symptoms and limitations "only partially credible, largely due to the objective medical evidence and his treatment history." (R. 42). Specifically, the ALJ noted that "the claimant's treatment for his physical impairments has been entirely conservative in nature, and his statements regarding the severity of these impairments is undermined by evidence showing his noncompliance with treatment recommendations, particularly as to his diabetes." Id. The ALJ gave little weight to "two notes from the claimant's primary care physician ... stating that the claimant [was] disabled" because the statements are "conclusory and vague in nature." (R. 43). The ALJ gave moderate weight to Ms. Sanchez's testimony and Dr. Hirano's consultative opinion, and he gave significant weight to the reports from Disability Determination Service's medical consultants. (R. 43-44). With regard to Chatman's VA disability rating, the ALJ acknowledged that the Fourth Circuit's recent decision in Bird v. Commissioner of Social Security, 699 F.3d 337 (4th Cir. 2012), required him to start from the rebuttable presumption that Chatman's VA disability rating was entitled to substantial weight, however he explained that the objective medical evidence did not support a finding of disability within the meaning of the Social Security Act. (R. 44).

**B.    The ALJ Properly Evaluated Chatman's VA Disability Rating, and the ALJ's Decision Was Supported by Substantial Evidence.**

Chatman urges the court to vacate and remand the Commissioner's decision for the sole reason that the ALJ awarded significant weight to his 80 percent VA disability rating, and therefore should have found that he was disabled.[1] (ECF No. 12, at 7). That is, Chatman argues that the ALJ improperly evaluated the evidence under the legal standard set forth in Bird,

---

[1] Chatman's brief states that the ALJ assigned "substantial weight" to the VA disability rating, however, the ALJ's decision used the phrase "significant weight." (ECF No. 12); see (R. 43). For the purposes of this report, the terms are used interchangeably.

resulting in a decision that warrants remand because it "makes no logical or legal sense." Id. The Defendant argues that, contrary to Chatman's assertion, the ALJ properly evaluated the evidence of record, including the VA disability rating, and explained why the 80 percent VA disability rating did not mandate a finding of disability under the Act. (ECF No. 14, at 11-15).

In Bird, the claimant, a Vietnam War veteran, had received a 100 percent VA disability rating, based mostly on his symptoms related to post-traumatic stress disorder. Bird, 699 F.3d at 339-40. The district court affirmed the ALJ's decision denying Bird's claim, and the Fourth Circuit reversed, holding that "the ALJ committed an error of law by failing to give appropriate weight to the VA rating decision." Id. at 344. The Fourth Circuit held that "in making a disability determination, the SSA must give substantial weight to a VA disability rating" because "both the VA and Social Security programs serve the same governmental purpose of providing benefits to persons unable to work because of a serious disability," and "[b]oth programs evaluate a claimant's ability to perform full-time work in the national economy on a sustained and continuing basis." Id. at 343-44 (emphasis added). "However, because the SSA employs its own standards for evaluating a claimant's alleged disability … an ALJ may give less weight to a VA disability rating when the record before the ALJ clearly demonstrates that such a deviation is appropriate." Id. at 343 (emphasis added).

In the ALJ's decision denying Chatman's claim for DIB, the ALJ discussed the requirements under Bird, stating that:

> The Fourth Circuit's ruling in Bird v. Commissioner of Social Security, (4th Cir. 2012) has been considered. The undersigned gives significant weight to the 80% VA disability rating and associated finding that the claimant is unable to secure and follow a substantially gainful occupation due to disability, for nonservice-connected pension purposes. The impairments described in the VA decision have been duly considered under Social Security standards and the appropriate limitations related to these impairments have been incorporated into the residual functional capacity described above. However, the undersigned does not reach

the identical conclusion that the claimant is unable to perform substantial gainful activity due to such impairments.... Therefore, despite the rating decision, the objective evidence discussed here ... does not support a finding of disability for the claimant, for Social Security purposes.

(R. 43-44) (citations omitted). As the ALJ pointed out in his decision, under the rule in Bird, when a claimant has a prior VA disability rating, the ALJ must give the rating substantial weight or explicitly detail the reasons for giving it less weight. See Bird, 699 F.3d at 343; see also (R. 43). The ALJ therefore applied the proper legal standard when analyzing Chatman's claim because he acknowledged the presumptive weight to be awarded to a VA disability rating, and then explained why the evidence in Chatman's case did not support an identical finding. Chatman's assertion that "controlling Fourth Circuit precedent requires [the ALJ] to grant the disability claim" because the ALJ gave " 'substantial weight' to a highly relevant piece of evidence" goes beyond the requirements set forth in Bird. (ECF No. 12, at 7). Although the ALJ must start from the presumption that a VA disability rating is entitled to substantial weight, this presumption is rebuttable, meaning the ALJ is not bound to reach the same conclusion on disability, when as was the case here, he determines that the objective medical evidence does not support such a finding. Bird did not modify federal regulations which unequivocally state that the VA disability rating is not binding on the ALJ. 20 C.F.R. § 404.1504 ("A decision by any nongovernmental agency or other governmental agency about whether [a claimant is] disabled or blind is based on its rules and is not [the Social Security Administration's] decision about whether [the claimant is] disabled or blind.... Therefore, a determination made by another agency that [the claimant is] disabled or blind is not binding on [the Social Security Administration]."); see also SSR 06-03P, 2006 WL 2329939. Instead, the case merely requires that the ALJ consider the rating, afford it appropriate weight, and explain the reasons why it deserves less weight. Moreover, affording any evidence significant weight does not mandate a

finding of disability because such a finding is always reserved to the Commissioner. See SSR 96-5P, 1996 WL 374183.

Chatman also argues that the ALJ's explanation about why he reached a different conclusion on disability is insufficient because it is not supported by the record. Specifically, Chatman asserts that the ALJ erred because "[p]ossibly the most important lesson from the Fourth Circuit in Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015), is that [it] is not enough for an ALJ to just give a reason for weighing evidence, but [he] must actually explain it, and the explanation needs to make sense." (ECF No. 15, at 1). However, the ALJ's finding of no disability and his award of significant weight to Chatman's VA disability rating are not inconsistent with the record. Specifically, as to Chatman's alleged physical impairments, the ALJ stated that "[t]he medical record confirms that the claimant suffers from diabetes. He has regular endocrinology and pharmacy consultations, but the evidence indicates that his condition has been difficult to control, particularly due to his noncompliance with diet, checking his blood sugar, and taking his insulin." (R. 41). Noncompliance with a medical treatment is an appropriate factor to consider in the disability analysis. See Dunn v. Colvin, 607 Fed. Appx. 264, 275 (4th Cir. 2015); see also 20 C.F.R. § 1530 ("In order to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work.... If you do not follow the prescribed treatment without good reason, we will not find you disabled.").

The ALJ noted that with regard to Chatman's diabetes-related neuropathy, "which has resulted in decreased sensation, particularly in his feet ... examinations have consistently shown [Chatman's] strength to remain intact, at 5/5, with no muscle atrophy." Id. This statement mirrors the objective findings in Chatman's VA evaluation. (R. 683-84). As to Chatman's low back pain, the ALJ stated:

> The claimant also suffers from back pain, and has intermittently exhibited associated muscle spaces, [and] reduced lumbar range of motion ... [h]owever ... a lumbar spine MRI on August 5, 2009 ... showed only minimal and mild degenerative changes.... Follow up x-rays on August 27, 2013 showed only this unchanged mild anterolisthesis. His treatment for this impairment has mainly included pain medication.

(R. 41-41). Finally, with regard to Chatman's depression, the ALJ stated that "the objective evidence is ... benign, as it shows that the claimant's behavior and cognition remained normal throughout the period in question.... [H]e has admitted to not consistently taking his depression medication ... [and] his mental health treatment has also been conservative, with only medication management and therapy." (R. 42). The ALJ also discussed the opinion evidence from the medical professionals who examined Chatman. Relevant here, the ALJ discussed the report from the VA Compensation and Pension examination performed on September 18, 2010, in which the examiner stated "that the claimant's diabetes and lumbar spine impairment ... [did] not have any effect on his usual occupation or result in work problems." (R. 43). The ALJ assigned this report "significant weight," noting that the report's conclusions were "generally consistent with the objective findings and conservative treatment discussed above." Id.

The ALJ's detailed examination of Chatman's medical records shows that the decision was supported by substantial evidence. That is, the ALJ analyzed Chatman's medical records to determine whether the alleged severity of Chatman's impairments was supported by the record. Indeed, Chatman does not argue otherwise. Instead, he claims that because the ALJ acknowledged a responsibility to closely examine the VA disability rating and assigned it significant weight, he was bound to thereafter reach the same conclusion on disability. Even if the ALJ did not recite what Chatman considers to be the proper – or magic – words, the ALJ's decision is not then necessarily improper or unsupported by the evidence. See, e.g., Magallanes v. Bowen, 881 F.2d 747, 755 (9th Cir. 1989) ("It is true that the ALJ did not recite the magic

words…. But our cases do not require such an incantation."). Here, the ALJ assigned significant weight to the VA disability rating, but also assigned significant weight to other evidence in the record, such as Chatman's pension examination report, the state agency medical and psychological consultants' reports, and the objective medical evidence demonstrating Chatman's noncompliance with treatment and benign mental health findings. As discussed above, because different parts of the record can be assigned significant weight, no single record is dispositive. In Chatman's case, other evidence – which was also assigned significant weight – did not support a finding of disability within the meaning of the Social Security Act. The ALJ therefore did not improperly apply Bird because he explained why he did not reach the same conclusion on disability as the VA, and evidence in the record and cited by the ALJ supported his decision.

## V.    RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the court DENY Chatman's Motion for Summary Judgment (ECF No. 11), GRANT the Commissioner's Motion for Summary Judgment (ECF No. 13), and AFFIRM the final decision of the Commissioner.

## VI.    REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1.    Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this Report to the objecting party, 28 U.S.C. § 636(b)(1)(C), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

2.    A district judge shall make a de novo determination of those portions of this

17

report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this Court based on such findings and recommendations. Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

/s/

Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
March 30, 2016

18